IN THE UNITED STATES BANKRUPTCY COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| S SQUARED, LLC | ) | CASE NO. 14-81423-JAC11 |
| | ) | |
| Debtor. | ) | CHAPTER 11 |
| | ) | |
| S SQUARED, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | AP No. _____ |
| | ) | |
| SUTHERLAND ASSET I, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT TO DETERMINE VALIDITY, EXTENT,
AND PRIORTY OF LIEN AND FOR OTHER RELIEF**

COMES NOW Plaintiff, S Squared, LLC ("Plaintiff"), and files this Complaint to Determine the Validity, Extent, and Priority of Lien and For Other Relief against Defendant Sutherland Asset I, LLC, a Delaware Limited Liability Company ("Defendant"), stating the following in support thereof:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is the Debtor in the above styled Chapter 11 case (hereinafter "Debtor") and is entitled to file this adversary proceeding in accordance with 11 U.S.C. § 506 and *Fed. R. Bankr. P.* 7001.

2. Sutherland Asset I, LLC ("Sutherland"), which is a limited liability company organized and existing under the laws of the State of Delaware and may be served with process by

<br>
<br>

first class mail, postage prepaid, pursuant to *Fed. R. Bankr. P.* 7004, to Sutherland Asset I, LLC, c/o Corporation Service Company, its Registered Agent, located at: 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808 with a copy to Mark A. Baker, 1960 Tall Tree Dr NE, Atlanta, GA 30324-2724.

3. This Honorable Court has jurisdiction to hear Debtor's adversary proceeding pursuant to 28 U.S.C. § 1334 and venue lies in this district and division in accordance with 28 U.S.C. § 1409. This is a "core" proceeding as determined by 28 U.S.C. § 157(b)(2)(F).

## STATEMENT OF FACTS

4. On May 22, 2014, Debtor filed a Petition for Relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, Northern Division of Alabama.

5. At the time of filing their petition, Debtor owned and resided at 9584 Madison Boulevard, Madison, AL 35758 (the "Property").

6. On March 3, 2006 S Squared LLC (hereinafter, "S2") borrowed $675,000 from First Commercial Bank in Huntsville, Alabama (hereinafter "S2 Note") to purchase certain real property located at 9584 Madison Blvd, Madison, Alabama ("Real Property"). A true and correct copy of the S2 Note is attached as **Exhibit "A".** At all times material to this action, S2 owned the Real Property. Also on March 3, 2006 S Squared borrowed an additional $472,500 from First Commercial Bank (Second S2 Note).

7. The S2 Note as well as the Second S2 Note were secured by a Real Estate Mortgage and Security Agreement dated March 3, 2006 in the amount of $1,147,500 and recorded with the Madison County, Alabama Judge of Probate at Instrument Number 20060303000135250 (hereinafter referred to as 2006 Mortgage). A true and correct copy

of the 2006 Mortgage is attached as **Exhibit "B"**. In addition to the 2006 Mortgage, S2 also gave First Commercial an Assignment of Rents and Leases as additional collateral to secure repayment of the S2 Note and Second S2 Note. A true and correct copy of the Assignment of Rents and Leases is attached as **Exhibit "C"**.

8. On or about April 7, 2006, S2 and an related entity known as Victory Sweepers, Inc., borrowed $488,000 from the Southern Development Council, Inc. (hereinafter, "CDC"; and the loan from the CDC is hereafter referred to as "CDC Loan") and paid off the Second S2 Note in full. The CDC Loan was secured by a Mortgage upon the Real Property as well as an Assignment of Leases and Rents. True and correct copies of the CDC Mortgage and CDC Assignment of Rents are attached as **Exhibits "D" and "E"**, respectively.

9. In conjunction with paying off the Second S2 Note with CDC Loan proceeds, First Commercial and the CDC entered into a "Prior Lienholder's Agreement" dated April 7, 2006. This agreement was recorded with the Madison County Alabama Judge of Probate at Instrument Number 20060505000298110. A true and correct copy of the Prior Lienholder's Agreement is attached hereto as **Exhibit "F"**.

10. The Prior Lienholder's Agreement has multiple provisions that were intended to benefit S2 and S2 was required to acknowledge and consent to its terms. Among the various provisions contained within this the following:

    a. That the CDC will pay First Commercial the amount due under the Second S2 Note at the instruction given by S2 to the CDC;

    b. That the S2 Note did not have any early call features [See ¶3];

    c. That the S2 Note was not payable on Demand unless in default [See ¶3];

    d. That the S2 Note had a term of at least 10 years without a balloon payment [See ¶3];

    e. That First Commercial would not cross collateralize any existing or future loans with the Real Property subject to the CDC Mortgage [See ¶3];

    f. That if there is a default or event of default, that First Commercial must first give the CDC and the SBA written notice of such default and the opportunity to cure prior to any foreclosure taking place [See ¶5]. This notice must be given within 30 days of the default and at least 60 days prior to the foreclosure date [Id.];

    g. First Commercial will not sell, all or any portion of its collateral without giving the CDC and the SBA notice [See ¶5]; and

    h. The Prior Lienholder's Agreement is binding upon the parties respective successors and assigns [See ¶6].

11. Prior to June, 2011 Synovus Bank, a Georgia Bank, formerly known as Columbus Bank & Trust Company, as the successor by merger to First Commercial Bank of Huntsville, became the owner and holder of the S2 Note and security instruments collateralizing same.

12. On June 17, 2011, Synovus required S2 to collateralize a separate loan by providing it a Mortgage on the Real Property that was subject to the CDC Mortgage (hereinafter, "2011 Mortgage"). Recognizing that the Prior Lienholder's Agreement prohibited the 2011 Mortgage, Synovus prepared and executed a Unilateral Amendment to Release Secured Interest on September 28, 2012. A true and correct copy of the Unilateral Amendment is attached as **Exhibit "G".** That Unilateral Amendment was filed with the Madison County, Alabama Judge of Probate at instrument number 2012004000638940 on October 4, 2012. The Unilateral Amendment makes express reference to the Prior Lienholder's Agreement dated April 7, 2006 and amends all loan documents to provide that the 2011 Mortgage no longer secured the S2 Note.

13. Also on September 28, 2012, Synovus sold the S2 Note and assigned the 2006 Mortgage, and the Assignment of Rents to Sutherland Asset I, LLC ("Sutherland"). A true and correct copy of the Assignment of Security Instruments is attached as **Exhibit "H"**. Interestingly, this assignment was not recorded with Madison County, Alabama Judge of Probate until October 16, 2012 at instrument number 20121016000665370 which was 12 days after the recording of the Unilateral Amendment.

14. Upon information and inquiry, Synovus did not notify the CDC, SBA or S2 prior to selling and assigning its collateral to Sutherland. Thus, the Assignment of Security Interests violated the terms of the Prior Lienholder's Agreement.

15. Prior to September, 2013 a dispute developed between Sutherland and S2. The dispute concerned whether S2 was in default under the terms of the S2 Note and 2006 Mortgage. During this dispute, S2 offered to cure any arrearage, if any. The dispute culminated in a foreclosure sale being held by Sutherland on August 2, 2013. Thereafter, Sutherland caused a Foreclosure Deed to be filed with the Madison County, Alabama Judge of Probate on September 18, 2013 at instrument number 20130918000615010. A true and correct copy of the Foreclosure Deed is attached as **Exhibit "I".** The Foreclosure Deed shows that "Synovus" was the highest bidder at the foreclosure sale and purchased the Real Property for $520,532.70.

16. Sutherland's purported foreclosure was ineffective, however, because it was done in the name of Synovus Bank. [See, Exhibit I]. The Foreclosure Deed states that "Synovus" carried out the publication of the foreclosure and that "Synovus", through its agent, conducted the foreclosure sale on August 2, 2013. "Synovus", however, did not own the

S2 Note nor the 2006 Mortgage as of August 2, 2013 since it had previously sold and assigned these instruments to Sutherland on September 28, 2012. [See, Exhibit H].

17. Moreover, upon information and inquiry, Sutherland failed to give notice of the default and of its intent to foreclose on the real property to the CDC and the SBA. Thus, Sutherland again breached the terms of the Prior Lienholder's Agreement when it carried out its foreclosure.

18. On or about April 25, 2014, Sutherland through counsel, sent a letter to S2 and notified it of a purported default under the S2 Note and 2006 Mortgage (hereinafter, "Letter"). A true and correct copy of this letter is attached as **Exhibit "J"**. Importantly, the Letter does not inform S2 that Sutherland was demanding turnover of rents or that it was sequestering the rents from the Real Property. Rather the Letter states that it shall "also serve as notice that the Lender intends to initiate foreclosure proceedings against the Property on May 23, 2014 and may also exercise it other rights under the Loan Documents…"

19. Furthermore, this Letter also violated the Prior Lienholder's Agreement is several material respects. First, the notice demands that S2 pay Sutherland the principal and accrued interest at the default rate of interest as well as all late charges and all other charges in order to "cure" a purported default. Pursuant to paragraph 2 of the Prior Lienholder's Agreement, however, all late fees and increased default interest payments were subordinated to the CDC Note. [See, Exhibit F ¶2]. Thus, S2 was precluded from paying Sutherland the amounts demanded by it in this notice. Additionally, the notice did not comply with the time requirements set forth in the Prior Lienholder's Agreement.

20. Sutherland has never taken any action to correct its wrongful foreclosure. Indeed, as of the date of filing this complaint, real property which is subject to the 2006 Mortgage and the CDC Mortgage is, according to the public records of Madison County, Alabama, shown as being owned by Synovus Bank.

21. Section 35-10-5, Alabama Code, provides as follows:

> In the case of a foreclosure under sections 35-10-2 through 35-10-4, the foreclosure deed executed by the mortgagee or his transferee, or the owner of the debt secured thereby, or his agent or attorney or personal representative, shall operate to convey the legal title to the lands sold to the purchaser at such sale.

## COUNT 1- QUIET TITLE

22. S2 realleges and incorporates all material allegations contained in this complaint.

23. Plaintiff S2 offers to do equity.

24. The Foreclosure Deed [Exhibit I] is legally ineffective because it clearly shows "Synovus Bank" as the entity on behalf of which the foreclosure sale was conducted as well as being the owner and holder of the 2006 Mortgage on the date of the foreclosure sale.

25. Synovus, however, had previously sold and assigned the S2 Note nor the 2006 Mortgage to Sutherland on September 28, 2012 and did not own them as of the foreclosure date [See, Exhibit H]. Therefore, Synovus could not have legally foreclosed upon said real property. §35-10-1, Ala. Code.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, Plaintiff S2 demands judgment against the Defendant declaring that the Foreclosure Deed (Exhibit I) is null and void and the legal title to the property remains with S2 as well as grant Plaintiff such further and additional relief to which it is justly entitled.

## COUNT II – VALIDITY AND AMOUNT OF SOUTHERLAND'S LIENS

26. S2 realleges and incorporates all material allegations contained in this complaint.

27. As discussed above, the Assignment of the Security Instruments (Exhibit H) violated the terms of the Prior Lienholder's Agreement (Exhibit F) because neither Synovus or Sutherland complied with the requirement that the CDC be notified prior to the sale of any of the collateral. S2 is a third party beneficiary to this requirement as it was expressly required to sign the agreement acknowledging and consenting to its terms. As such the sale of the 2006 Mortgage and the Assignment of Leases is ineffective.

28. Furthermore, Sutherland did not take any affirmative steps pre-petition to perfect its security interest in the rents generated by the Real Property. Pursuant to applicable Alabama law, there must be a default and intervention by the mortgage holder in order to perfect such an interest in rents. . *In re Turtle Creek, LTD.,* 194 B.R. 267, 279-80 (Bankr.N.D.Ala.1996). Intervention means an additional step such as foreclosure, sequestration of the rents, appointment of a receiver to collect the rents, or some similar action in order to perfect a lien on rents generated by a mortgagor's property. Id

29. In this case, the Letter does not inform S2 that Sutherland was demanding turnover of rents or that it was sequestering the rents from the Real Property. Rather the Letter states that it shall "also serve as notice that the Lender intends to initiate foreclosure proceedings against the Property on May 23, 2014 and <u>may</u> also exercise it other rights under the Loan Documents…" (emphasis added). Accordingly, even assuming that Sutherland has a security interest in the rents from the Real Property, it did not properly perfect this interest pre-petition and the post-petition rents are property of the Debtor's estate. 194 B.R. at 280.

30. Moreover, Sutherland is claiming amounts due from the Debtor which it cannot collect or which are subordinated to the claims of the CDC. In the Letter, Sutherland's attorney demanded that S2 pay interest at the default rate, all late charges and all other charges provided for under the S2 Note and 2006 Mortgage (Exhibit J). Clearly, this demand violates paragraph 2 of the Prior Lienholder's Agreement (Exhibit F). That paragraph plainly states that all late fees and default rate of interest charges are subordinated to the claim of the CDC

31. Furthermore, Sutherland's actions in by slandering S2's title to the Real Property by improperly foreclosing upon the same must be offset against the amount, if any, that is actually owed to Sutherland. It is clear from the Assignment of Security Instruments (Exhibit H) that Sutherland purchased this debt from Synovus and probably did so at a discount. Upon information and belief, Sutherland through its agents refused to accept payments that were tendered to it by S2 demanding instead that the entire balance of the debt be paid. As discussed above this was not possible since Sutherland was attempting to collect improper charges. Nonetheless, Sutherland proceeded to attempt to foreclose on the Real Property. Sutherland's conduct is inequitable and its "loan to own" strategy should result in the amount of its claim, if any, being reduced to the amount that it paid Synovus Bank.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, S2 respectfully requests that this Honorable Court grant it the following relief:

1. Determine that Sutherland does not possess a valid lien upon the Real Property;

2. Determine that the Assignment of Rents is ineffective or alternatively, determine that Sutherland does not have a valid lien upon S2's post-petition rents as it was not properly perfected;

3. Determine the amount of Sutherlands' claim based upon its inequitable conduct;

4. Determine the amount of Sutherland's claim which is secured by the Real Property pursuant to §506 of the Bankruptcy Code; and

5. Grant S2 such further and additional relief as to which it is justly entitled.

## COUNT III – SLANDER OF TITLE

32. S2 realleges and incorporates all material allegations contained in this complaint.

33. At all times material hereto, S2 owned the Real Property which was subject to the 2006 Mortgage.

34. It is undisputed that a notice of Mortgage Foreclosure was published in the name of "Synovus" and that said foreclosure occurred subsequent to the S2 Note and 2006 Mortgage being sold to Sutherland.

35. As such, Sutherland either intentionally disparaged S2's title to the Real Property or recklessly disparaged same without information sufficient to support a bona fide belief that S2 had paramount title to the Real Property.

36. S2 has been damaged as a consequence of Sutherland's actions

WHEREFORE, PREMISES CONSIDERED, S2 demands judgment against Sutherland as follows:

1. The award of compensatory damages in an amount to be determined at trial;

2. To the extent appropriate, to set off the amount of said damages against the amount, if any, owed by S2 to Sutherland;

3. Grant S2 such further and additional relief as to which it is justly entitled.

Respectfully submitted on this the 1st day of August, 2014.

                                                              */s/ Kevin D. Heard*  
                                                              Kevin D. Heard  
                                                              Attorney for Plaintiff

<u>Of Counsel:</u>  
Heard Ary, LLC  
303 Williams Avenue  
Park Plaza, Suite 921  
Huntsville, Alabama 35801  
Tel: (256) 535-0817  
Fax: (256) 535-0818  
kheard@heardlaw.com

**<u>Addresses for Service of Summons and Complaint:</u>**

Sutherland Asset I, LLC  
c/o Corporation Service Company,  
its Registered Agent  
2711 Centerville Road  
Suite 400  
Wilmington, DE 19808

**<u>Addresses for Service to Parties in Interest:</u>**

Richard M. Blythe  
Bankruptcy Administrator  
P.O. Box 3045  
Decatur, AL 35602

Mark A. Baker  
*Attorney for Creditor Sutherland Asset I, LLC*  
1960 Tall Tree Dr NE  
Atlanta, GA 30324-2724